IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. |
| BNSF RAILWAY CO., | ) | |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

## COMPLAINT

**NOW COMES** the Plaintiff, **GREGORY JACKSON,** by and through his attorney, John S. Bishof, Jr. of the Law Office of John Bishof, PC, and for his Complaint against the Defendant, **BNSF RAILWAY CO.**, (hereinafter "**BNSF**") states unto this Honorable Court as follows:

## JURISDICTION AND VENUE

1. Count I of plaintiff's Complaint is based upon the Federal Employers Liability Act (FELA), 49 U.S.C. § 51 *et seq*. Count II is based upon the Federal Rail Safety Act as amended, codified in pertinent part at 49 U.S.C. §20109 *et seq*., 29 CFR Part 1982; 29 CFR § 1982.114. Count III is based upon and arising under the Family & Medical Leave Act (FMLA), as amended, 29 U.S.C. §2601 et seq.. Count IV is based upon and arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., to correct unlawful employment practices on the basis of disability and to provide appropriate relief to employees who were adversely affected by such practices. Count V is based on retaliation for plaintiff's disability and brought pursuant to Section 2000e-5 of Title VII of the Civil Rights Act of 1964. Counts VI and VII are brought pursuant to Section 2000e-5 of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 (42 U.S.C. 1981a) based upon race and retaliation. BNSF is an employer who employs in excess of fifty (50) employees.

2. This Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 29 U.S.C. §1331, since these claims arise under federal statutory law.

3. Venue is proper in the Northern District of Illinois because the actions complained of occurred in this District, and the Defendant owns, operates and controls many miles of track, rail yards and related facilities throughout the County of Kane, State of Illinois.

4. On June 13, 2015 applied for FMLA leave and was denied by defendant on July 7, 2015.

5. On June 29, 2015 Plaintiff filed a Charge with the Equal Employment Opportunity Commission located in Chicago, Illinois, Charge Number 440-2015-05138. The charge was filed within 300 days of the occurrence of the unlawful employment practices. The charges made included a violation of the Americans with Disabilities Act and Retaliation, discrimination based on race and Retaliation. (Attached as Exhibit A)

6. The EEOC issued a Notice of Right to Sue on charge number 440-2015-05138 on or about April 4, 2016. (Attached as Exhibit B). This claim is filed within ninety (90) days of receipt of said right to sue letters.

**PARTIES**

7. Complainant, Gregory M. Jackson, ("Jackson") resides at 1554 E. 61st Apt. 1E, Chicago, IL 60637. Mr. Jackson is a male African-American.

8. Respondent BNSF Railway Company, ("BNSF") is a corporation duly organized and existing according to law engaged in business as a common carrier by rail in interstate commerce. The company does business as a common carrier by rail in Kane County and various other counties located in this district. The BNSF owns, operates and controls many miles of track, rail yards and

related facilities throughout the County of Kane and various other counties located in this district. The BNSF's principle place of business is located in Fort Worth, Texas.

9. Jackson began working for BNSF in 1994, and at all relevant times, Jackson was working as an employee for BNSF.

10. Jackson resides and was employed, and BNSF operates in the geographical area in which United States Department of Labor, Occupational Safety and Health Administration, Region 5, Chicago Area Office is responsible for enforcement activities.

## COUNT I
## FELA

1 - 10. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1-10 of this complaint as paragraphs 1 - 10 of Count I.

11. On February 26, 2015, Jackson was working as a conductor for BNSF. He was a conductor on Metra's commuter train starting his shift in Aurora traveling to Chicago, Illinois and ending his shift on a Metra commuter train traveling from Chicago to Aurora, Illinois.

12. On said date and some time prior, he reported to the Aurora train station located at 233 N. Broadway, Aurora, Illinois at 6:00 a.m.

13. On said date, Jackson was working with another conductor Roy Nicholas. Jackson and Nicholas carpooled together to the Aurora train station that day.

14. After Jackson and Nicholas arrived at the Aurora train station, Nicholas asked for a radio check for the engineer. Jackson told Nicholas that the engineer had arrived and he was heading toward the train.

15. Nicholas told Jackson that he didn't know what he was talking about and began a

3

verbal assault on Jackson.

16. Nicholas then punched Jackson in the face twice, striking the right side of his face and left eye. The punches caused Jackson to fall to the ground. He sustained contusions to the right side of his face and jaw and left eye. His eyeglasses were shattered and his watch was broken.

17. As a result of Nicholas striking plaintiff and plaintiff's subsequent fall, Mr. Jackson suffered serious and permanent injuries to his head and face. These injuries were caused, in whole or in part, by the negligent and intentional acts of Nicholas, an employee of BNSF.

18. As a result, in whole or in part, of Defendant BNSF's foregoing negligence and intentional acts, Plaintiff suffered serious and permanent injury to his head and face; Plaintiff has received in the past and will in the future receive medical treatment for his injuries, in costs Plaintiff is unable to accurately determine at this time; Plaintiff has in the past and will in the future suffer emotional and physical pain;

19. By reason of each and all of the facts stated above, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff asks this Court to enter judgment in his favor and against Defendant BNSF, in such an amount sufficient to fully compensate Plaintiff for damages and injuries to be proven at trial for its costs and disbursements.

## COUNT II
### FRSA

1 - 19. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1-19 of Count I of this complaint as paragraphs 1 - 19 of Count II.

20. Later that day, Jackson sought medical treatment for his injuries. He also filled out

a personal injury report and submitted it to his supervisor. (Exhibit C- personal injury report). He had three subsequent visits with Dr. Okunieff which resulted in a total of $650 in medical bills for treatment. These bills were submitted to the BNSF however, they have not been paid.

21. On April 13, 2015 a formal investigation took place due to this incident. On April 28, 2015, Mr. Jackson was assessed sixty-one days of actual suspension that commenced on February 26, 2015 when he was pulled out of service pending the formal investigation and ending on April 28, 2015. In addition, he was assessed a three year review period that started on April 28, 2015. This means that any rule violation, no matter how minor, could result in further discipline including termination. (Attached is Exhibit D, letter of discipline dated April 28, 2015).

22. After Mr. Jackson returned to service after his sixty-one day suspension, he applied for intermittent leave under the FMLA for an unrelated medical condition. (Exhibit E, Notice of Intent to Take FMLA Leave dated May 6, 2015).

23. Mr. Jackson's physician certified the need for the intermittent leave on May 6, 2015. (Exhibit F, Certification of FMLA Leave dated May 6, 2015).

24. Less than a week later, the BNSF denied Jackson's request because it claimed that he had only worked 1112 hours for the 12 months immediately preceding the date of his request. (Exhibit G, Denial of FMLA Request).

25 Mr. Jackson had applied for FMLA and had been approved by the BNSF on previous occasions for the same unrelated medical condition. (Exhibit H, Approval and Designation of FMLA Leave dated April 8, 2013 and Exhibit I, Approval and Designation of FMLA Leave dated May 13, 2014).

26. On June 13, 2015, Jackson made a request for an accommodation which basically

reiterated what his physician had stated in the FMLA leave request, i.e., to allow Jackson intermittent leave to stay home on occasion and time for therapy at the doctor's office. (Exhibit J, Work-related Request for Accommodation).

27. Mr. Jackson retained John Bishof PC for the February 26, 2015 injuries he sustained at the workplace. John Bishof advised the BNSF on June 29, 2015 of said representation. BNSF's Claims Representative, Ardie B. Storey, acknowledged receipt of counsel's June 29, 2015 correspondence. (Exhibit K, BNSF's acknowledgment Letter dated July 2, 2015).

28. On July 10, 2015, BNSF advised Mr. Jackson that he was charged with violating attendance requirements for the months of April, May and June of 2015 and that a formal investigation would be conducted. This investigation took place on July 28, 2015.

29. On August 7, 2015, BNSF determined that Jackson violated GCOR 1.3.3 and 1.13 and BNSF's System General Notice and was assessed a Standard Formal Reprimand. (Attached is Exhibit L, GCOR 1.3.3 and 1.13 and BNSF's System General Notice). In addition, he was assessed a one year review period that started on August 7, 2015. This means that any rule violation, no matter how minor, could result in further discipline including termination. (Attached is Exhibit M, letter of discipline dated August 7, 2015).

30. At the July 28, 2015 formal investigation, Mr. Jackson provided the BNSF his medical care provider's notes advising the BNSF of his continued need for intermittent leave, a leave that had been approved in prior years.

31. The Federal Rail Safety Act as amended, codified in pertinent part at 49 U,S,C, § 20109 provides that a railroad carrier may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for engaging in a protected activity.

32. Plaintiff's protected activity was reporting his injury and the dangerous and intentional acts of fellow employee.

33. Plaintiff was disciplined (sixty-one day suspension) for engaging in the foregoing protected activity.

34. Also BNSF may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician.

35. The BNSF had used the unjust discipline of suspension to assessed further discipline for excessive absenteeism in violation of BNSF's attendance policy. BNSF also used the actual suspension it wrongfully assessed Mr. Jackson to deny his FMLA request based on not having worked the requisite hours in the previous year.

WHEREFORE, Jackson respectfully requests for the damages allowed under 49 U.S.C. §20109 including, but not limited to, restoration of any seniority status that he would have had but for the discrimination, back pay with interest, clearing his record of any discipline related to the adverse actions discussed above, compensatory damages including but not limited to damages for pain and suffering, the costs of searching for and relocating to a new job if necessary, and compensation for litigation costs, expert witness fees, and reasonable attorney fees. Because of BNSF's violations of 49 U.S.C. §20109 and BNSF's history of harassing, intimidating, and discriminating against injured employees, Jackson also prays for punitive damages not to exceed $250,000.00 under 49 U.S.C. §20109(e)(3).

## COUNT III
## FMLA

1 - 35. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1- 35 of Count

7

II of this complaint as paragraphs 1 - 35 of Count III.

      36.      On May 12, 2015 defendant denied plaintiff's request for FMLA.

      37.      Defendant claims that plaintiff made this request on June 13, 2015. Plaintiff submitting his request on May 6, 2015.

      38.      The reason given by defendant for denying plaintiff's request for FMLA leave was because defendant claimed that as of May 6, 2015 he only had worked 1112 hours and, therefore, did not have enough hours to qualify for FMLA. Whereas, plaintiff worked in excess of 2400 hrs. between May 7, 2014 and May 6, 2015.

      39.      Defendant failed to choose any of the methods provided in 29 CFR § 825.200(b)(1)-(4) to determine plaintiff's eligibility for FMLA leave.

      40.      By the aforesaid acts of defendant, **BNSF,** knowingly, intentionally and willfully interfered with plaintiff's rights under the FMLA, in that;

      a.      Defendant violated 29 CFR § 825.200(b)(1) - (4), in that, it ignored the methods provided by law to determine plaintiff's eligibility for FMLA leave;

      b.      defendant violated 29 CFR § 825.200(d)(1), in that, it did not apply a method that is consistent and uniform to all employees;

      c.      defendant violated 29 CFR § 825.200(d)(1), in that, it provide the 60 day notice to all employees of any change of method in determining the period during which use of leave entitlement is measured; and,

      d.      defendant violated 29 U.S.C. § 2614 (a)(4), in that, it failed to apply its FMLA practice or policy uniformly.

      41.      That as a direct and proximate result of one or more of the aforesaid acts, the Plaintiff

has sustained both physical and emotional injury and has suffered and will in the future suffer other great economic losses, which he would have acquired had the Defendant not violated his rights under the Family and Medical Leave Act.

WHEREFORE, Plaintiff prays judgment against the Defendant, BNSF, for damages consisting of back pay, prejudgment interest, compensatory damages, attorneys fees, litigation expenses, punitive damages and for such other and further relief that the Court deems proper pursuant to the Family and Medical Leave Act and its implementing Regulations.

## COUNT IV
## ADA

1 - 41. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1- 41 of Count III of this complaint as paragraphs 1 - 41 of Count IV.

42. Defendant knowingly, intentionally and willfully interfered with plaintiff's rights under the ADA, in that, it discriminated against the plaintiff on the basis of his disability regarding his application, processing and taking of leave pursuant to the FMLA, of which all acts prohibited by law. Specifically defendant committed the following unlawful acts during the time period commencing May 6, 2015 and continued to this date;

a. denied plaintiff leave pursuant to 29 CFR 1630.4(a)(v);

b. denied plaintiff reasonable accommodation without showing undue hardship pursuant to 29 CFR 1630.9(a): and,

c. defendant failed to apply its FMLA practice or policy uniformly; and,

43. That as a direct and proximate result of one or more of the aforesaid acts, the Plaintiff has sustained both physical and emotional injury and has suffered and will in the future suffer other

great economic losses, which he would have acquired had the Defendant not violated his rights under the Americans With Disabilities Act.

WHEREFORE, Plaintiff prays judgment against the Defendant, for damages consisting of back pay, prejudgment interest, compensatory damages, attorneys fees, litigation expenses, punitive damages and for such other and further relief that the Court deems proper pursuant to the American With Disabilities Act and its implementing Regulations.

## COUNT V
## ADA-Retaliation

1-43. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1 through 43 of Count IV of this Complaint as paragraphs 1 through 43 of Count V.

44. Defendant retaliated against plaintiff by interfering with his rights provided under the ADA.

45. Specifically, defendant retaliated against the plaintiff for engaging in the protected activity of making a request for a reasonable accommodation under the ADA and exercising his rights under the ADA.

46. The ADA makes it "unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of or on account of his or her having exercised or enjoyed...any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

47. The reasonable accommodation is allowing plaintiff leave to intermittently receive medical treatment from his medical care provider for his serious medical condition. After each request by plaintiff for a reasonable accommodation for his disability the defendant proceeded to retaliate against plaintiff by charging him with excessive absenteeism. Plaintiff was then placed in
10

an attendance watch program and was assessed a Standard Formal Reprimand.

48. As a direct result of the defendant's malicious intent to retaliate against plaintiff based on his protected activity of requesting a reasonable accommodation and exercising his rights under law, the plaintiff has sustained injuries of a personal, permanent and pecuniary nature.

WHEREFORE, Plaintiff prays judgment against the Defendant, for damages consisting of back pay, prejudgment interest, compensatory damages, attorneys fees, litigation expenses, punitive damages and for such other and further relief that the Court deems proper pursuant to the American With Disabilities Act and its implementing Regulations.

## COUNT VI
### Section 2000e-3 of Title VII Civil Rights of 1964 and the Civil Rights Act of 1991 (42 U.S.C. 1981a) (Race)

1-48. Plaintiff adopts and reaffirms the allegations contained in paragraphs 1 through 48 of Count V of this Complaint as paragraphs 1 through 48 of Count VI.

49. Defendant denied plaintiff request for FMLA claiming that he did not have the requisite number of hours worked in the previous 12 month time period to qualify for FMLA.

50. One Caucasian BNSF Conductor/trainman, BK, was off work due to a Rule G violation for at least 3 months in the fall of 2015. Shortly after he returned to work he requested FMLA leave which defendant granted.

51. Upon information and belief, defendant has granted other FMLA requests by Caucasian employees by calculating their hours worked in the previous 12 month time period more favorably than the defendant had calculated plaintiff's hours worked.

52. Defendant has calculated the hours worked by those conductors/trainmen not of the same race as plaintiff more favorably and differently than the way it calculated the hours worked by

11

plaintiff in determining FMLA eligibility.

53. The foregoing was a prevalent discriminatory and unlawful practice by defendant and upon information and belief, were intentional acts of discrimination against the plaintiff.

54. Defendant, at all times, acted with malice or reckless indifference to the federally protected rights of the plaintiff in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*, and Title I of the Civil Rights Act of 1991.

55. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has lost and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits. Plaintiff has also suffered severe emotional distress and humiliation about the ability to support himself, as well as disruption of his personal life and damage to his employment reputation.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for recovery of reasonable damages as may be proven at the time of trial, including but not necessarily limited to, actual, consequential and punitive damages, attorneys fees and cost, and such other and further relief as this Court may deem appropriate.

## COUNT VII
### Section 2000e-3 of Title VII Civil Rights of 1964-Retaliation

1-55 Plaintiff repeats and alleges Paragraphs 1 through 55 of Count VI of this Complaint as paragraphs 1 through 55 of Count VII as if fully set forth herein.

56. Section 2000e-3(a) of Title VII prohibits, inter alia, retaliation and discrimination against any individual because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Title VII of the Civil Rights Act

of 1964, as amended.

57.     Defendant retaliated against plaintiff after plaintiff filed a claim alleging discrimination with the Illinois Department of Human Rights/United States Equal Employment Opportunity Commission on June 29, 2015.

58.     Defendant retaliated against plaintiff by charging him, with violating attendance requirements for the months of April, May and June of 2015.

59.     Defendant retaliated against plaintiff by assessing him a Standard Formal Reprimand. In addition, he was assessed a one year review period that started on August 7, 2015. This means that any rule violation, no matter how minor, could result in further discipline including termination.

89.     As a direct and proximate result of defendant's violation of Title VII, plaintiff has lost and will continue to lose income and employment benefits. Plaintiff has also suffered emotional distress, as well as disruption of his personal life and damage to his employment reputation.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for recovery of reasonable damages as may be proven at the time of trial, including but not necessarily limited to, actual, consequential and punitive damages, attorneys fees and cost, and such other and further relief as this Court may deem appropriate.

> Respectfully Submitted,
>
> By: /s/ John S. Bishof, Jr.
> John S. Bishof, Jr.
>
> Law Office of John Bishof, P.C.
> 101 N. Wacker Dr. Suite 200
> Chicago, IL 60606
> Phone: 312-630-2048
> Fax: 312-630-2085
> jsbishof@jsblegal.com