UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY JACKSON,<br><br>    Plaintiff,<br><br>V.<br><br>BNSF RAILWAY COMPANY,<br><br>    Defendant. | Case No. 16-cv-5518<br><br>Judge John Robert Blakey |

MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Jackson ("Plaintiff"), a former conductor for Defendant BNSF Railway Company ("BNSF" or "Defendant"), alleges multiple unlawful employment practices on the part of his former employer. Compl. [1]. As it relates to the present motion, Plaintiff claims liability against Defendant under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, for injuries sustained as a result of a physical altercation with Plaintiff's former co-worker, Roy Nicholas ("Nicholas"). *Id.* On July 5, 2016, Defendant filed a motion to dismiss Plaintiff's FELA claim on the grounds that Plaintiff fails to state a claim for which relief can be granted. Def.'s Mot. Dismiss [15]. For the reasons explained below, Defendant's motion is granted.

I.     Background

On February 26, 2015, Plaintiff was working as a conductor aboard a Metra commuter train operating between Chicago and Aurora, Illinois. Compl. [1] ¶ 11. Plaintiff carpooled to the Aurora train station for the start of his shift with

1

Nicholas, a fellow BNSF conductor. *Id*. ¶ 13. While Plaintiff's complaint lacks sufficient detail to form a complete picture of the altercation between Plaintiff and Nicholas, it generally alleges that sometime around 6:00 a.m., shortly after arriving at the train station, Nicholas "asked for a radio check for the engineer." *Id*. ¶ 14. Plaintiff told Nicholas that "the engineer had arrived and was heading toward the train," to which Nicholas replied that Plaintiff did not "know what he was talking about." *Id*. ¶ 15.

Plaintiff alleges that at that point, Nicholas began a "verbal assault." *Id*. According to Plaintiff, Nicholas then punched Plaintiff twice in the face, causing him to fall to the ground. *Id*. ¶ 16. Plaintiff sustained contusions to his face, jaw, and eye, shattered his eyeglasses, and broke his watch. *Id*. Although Defendant does not stipulate to the exact number of punches or the nature of Plaintiff's injuries, it concedes the existence of a physical assault of Plaintiff by Nicholas. Def.'s Answer [13] ¶ 16.

On May 24, 2016, Plaintiff filed a seven-count complaint against Defendant. Compl. [1]. In Count I—the subject of this decision—Plaintiff alleges that Defendant is liable under the FELA for his injuries from Nicholas' assault.[1] *Id*. ¶¶ 11-19. Plaintiff asserts that he suffered "serious and permanent injuries to his head and face" which were caused, in whole or in part, "by the negligent and intentional

---

[1] Plaintiff's other counts allege violations of the Federal Rail Safety Act, 42 U.S.C. § 20101, *et seq*.; Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.; Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. None of Plaintiff's other counts are the subject of Defendant's Motion to Dismiss. Therefore, they will not be further discussed.

acts" of Nicholas and Defendant. *Id*. ¶¶ 17-18. Defendant denies liability for any wrongdoing. Def.'s Answer [13] ¶ 18.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion "is not to decide the merits of the case." *Coleman v. Depke*, No. 14-CV-02015, 2014 WL 6563814, at *1 (N.D. Ill. Nov. 20, 2014). Rather, a motion to dismiss "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 577).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. In making this determination, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff. *Id*.

### III. Discussion[2, 3]

Defendant first argues that Count I fails on its face because under the FELA, an employer is responsible only for negligent conduct and cannot be liable for intentional torts. Def.'s Mot. Dismiss [15] 1, 3-4. Defendant argues that, by Plaintiff's own admission, his injuries were caused by "the negligent and *intentional* acts of Nicholas." *Id*. at 2 (emphasis in original) (citing Compl. [1] ¶ 18). Additionally, Defendant asserts that, to support employer liability, an employee's negligent acts must either be foreseeable or occur within the course of employment. *Id*. at 4-8. Defendant contends that Count I fails to properly plead a claim for either vicarious or direct liability on the part of BNSF. *Id*. This Court addresses both issues in turn.

---

[2] Plaintiff argues that Defendant's motion is premature because Defendant attached extrinsic materials to its Answer to Plaintiff's Complaint. Pl.'s Resp. Def.'s Mot. Dismiss [20] 2. Plaintiff, however, improperly conflates two separate issues: (1) permissibly attaching additional materials to a responsive pleading in order to prove or disprove certain allegations, *see Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1091 n.2 (N.D. Ill. 1991); Fed. R. Civ. P. 10(c); and (2) impermissibly presenting additional materials outside of the complaint to support a Rule 12(b)(6) motion to dismiss. *See Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1042-43 (N.D. Ill. 1994). Here, Defendant's motion considers only the Complaint and does not reference any documents attached to its Answer.

[3] Defendant claims that Plaintiff improperly attempted to amend Count I by asserting new facts in his response to Defendant's Motion to Dismiss. Def.'s Reply [21] 5. The Seventh Circuit has consistently held that a plaintiff may not use responsive briefs as a vehicle for amending the complaint. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Accordingly, the Court limits its analysis to the factual allegations set forth in Plaintiff's Complaint.

4

## A. Recovery For Intentional Torts Under The FELA

As a preliminary matter, the Court must assess Defendant's claim that, as a matter of law, Plaintiff cannot state a FELA cause of action for the intentional tort of a co-worker. Defendant grounds its argument on the text of the FELA statute:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the *negligence* of any of the officers, agents, or employees of such carrier . . . .

45 U.S.C. § 51 (emphasis added).

Defendant's reading, however, fails to recognize controlling precedent and the remedial purposes for which the FELA was enacted. Congress designed the FELA to "stimulate carriers to greater diligence for the safety of their employees." *Id.* Therefore, courts have "liberally construed [the FELA's] requirements in favor of plaintiffs because FELA was designed for the benefit and protection of railroad employees." *Sowards v. Chesapeake & O. Ry. Co.,* 580 F.2d 713, 714 (4th Cir. 1978); *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (noting "a relaxed standard of causation applies under FELA") (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542-43 (1994)); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987) (recognizing the FELA as "a broad remedial statute" and adopting a "standard of liberal construction in order to accomplish Congress' objects") (internal quotations omitted); *Crompton v. BNSF Ry. Co.*, 745 F.3d 292, 296 (7th Cir. 2014) ("The FELA . . . should be construed liberally to effectuate congressional intent.").

Thus, the applicability of the FELA "to (at least some) intentional torts" is well settled. *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 818 (7th Cir. 1985).

5

Under *Lancaster's* statutory construction, a plaintiff suing under the FELA "may prevail in an intentional tort case by showing either that the intentional tort was committed in furtherance of the employer's objectives or that the employer was negligent in hiring, supervising, or failing to fire the employee." *Id*. In other words, a plaintiff can establish an employer's liability for the intentional acts of its employees using one of two theories: (1) vicarious liability; or (2) direct negligence. *Id*.

Therefore, the Court rejects Defendant's argument that Count I must be summarily dismissed on the grounds that the FELA does not compensate for any intentional torts. Instead, pursuant to *Lancaster*, the probative inquiry is whether Plaintiff's allegations are sufficient to allow the Court to draw the reasonable inference that Defendant is liable for Nicholas' intentional assault on the basis of either vicarious liability or direct negligence in hiring, supervising, or failing to fire the employee.

### B. Vicarious Liability

Vicarious liability may extend to FELA employers under the traditional doctrine of *respondeat superior*. That is, an employer "may be vicariously liable for its employee's negligence (or intentional tort) committed within the course or scope of employment." *Sobieski v. Ispat Island, Inc.,* 413 F.3d 628, 631-32 (7th Cir. 2005). Courts have defined "course of employment" to require a plaintiff to show "that the employee's tort" was in "furtherance of the employer's business," such as where the "employee assaults the plaintiff to collect a debt owed the employer." *Lancaster*,

6

773 F.2d at 817.  In contrast, when an employee assaults another employee "for the sole purpose of satisfying his own temper or spite, the employer cannot be held liable for such a wanton act." *Sowards,* 580 F.2d at 715 (citing *Davis v. Green*, 260 U.S. 349, 351-52 (1922)); *Higgins v. Metro-N. R. Co.*, 318 F.3d 422, 426 (2d Cir. 2003) ("[U]nder the doctrine of *respondeat superior* . . . no liability attaches when an employee acts entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer.") (internal quotation omitted). Ultimately, "regardless of how individual courts have stated the tests, in order for an activity to qualify as being within the scope of employment, it must be a necessary incident of the day's work or be essential to the performance of the work." *Sobieski,* 413 F.3d at 634.

In *Sobieski*, the plaintiff, a crewman on a merchant vessel, was sitting in a chair when another crewman snuck up behind him and "cracked" the plaintiff's neck "chiropractor style." *Id*. at 629-30.  The plaintiff sued his employer under the Jones Act, alleging that he suffered ongoing physical problems as a result of the unrequested neck traction.[4] *Id*. at 630.  The district court granted summary judgment in favor of the employer. *Id*.  On appeal, the Seventh Circuit affirmed that the plaintiff was required to show that the injuring crewman "acted in furtherance of the ship's business before [the employer] may be held vicariously liable for his actions." *Id*. at 634.  According to the court, the plaintiff failed this

---

[4] Congress enacted the Jones Act "to create a federal negligence claim for seamen injured in the course of employment." *Sobieski*, 413 F.3d at 631.  By its terms, the act extends the protections of the FELA to seamen; thus, "FELA caselaw is broadly applicable in the Jones Act context" and vice versa. *Id*.

7

test. The crewman's official duties "were to work on deck, steer the ship, and act as a lookout"; he possessed "no express authorization to crack anyone's neck, nor was such neck-tractioning part of his official duties." *Id*. The plaintiff argued that, despite these facts, the injuring crewman's "subjective belief that he was helping [the plaintiff]" brought his neck-tractioning within the scope of employment "because it was somehow beneficial to the operation of the ship." *Id*. The court disagreed, stating that "to the extent [the injuring employee's] subjective beliefs may be relevant to the scope of employment inquiry, those beliefs should be reasonable and the resulting action somehow related to the ship's business." *Id*.

Here, as in *Sobieski*, Plaintiff fails to allege any facts demonstrating that Nicholas acted in furtherance of Defendant's business at the time of his assault. Plaintiff's Complaint is silent regarding Nicholas' official duties, but it cannot be reasonably inferred from the record here that punching co-workers in the face falls within a conductor's job description. The complaint is equally devoid of allegations that Defendant "knew of or condoned" Nicholas' actions, or that Nicholas reasonably believed his act furthered Defendant's mission. *See id*. Instead, as in *Sobieski*, Nicholas' assault "clearly falls within that category of acts commonly held to be outside the scope of employment—those undertaken by an employee for a private purpose and having no causal relationship with his employment." *Id*. at 634-35.

Contrary to the present controversy, FELA cases that *do* find vicarious liability for intentional assaults typically involve incidents between a supervisor and a subordinate. For example, in *Lancaster*, a railroad worker brought a FELA

claim against the railroad after suffering multiple assaults at the hands of several unruly supervisors. 773 F.2d at 810. Specifically, Lachrone, a "short-tempered" foreman, became angry at Lancaster and several other employees who he thought were "soldiering on the job." *Id.* at 811. After flipping over a table and smashing a bench, Lachrone screamed at Lancaster and menacingly shook a broom handle in his face. *Id.*

Over the next few years, Lancaster suffered additional assaults from other supervisors. *Id.* Eventually, Lancaster found himself working under Tynan, another "hot-tempered" foreman, who one day became enraged at Lancaster for delivering papers to him that were "folded" (apparently against his request). *Id.* Enraged, Tynan charged at Lancaster with a pickax handle in hand and struck the doorframe over Lancaster's head. *Id.* This incident, on top of the previous conflicts, sent Lancaster into a mental tailspin. *Id.* Two weeks later, a psychiatrist diagnosed Lancaster as schizophrenic. *Id.* Lancaster never returned to work. *Id.*

A trial court awarded Lancaster $850,000 in damages. *Id.* at 810. On appeal, the railroad asserted that the suit should be dismissed on the grounds that the supervisors' misconduct occurred outside the scope of their employment. *Id.* at 812. The Seventh Circuit rejected the railroad's argument, finding "the railroad's liability on the basis of *respondeat superior* to be plain with regard to Lachrone and Tynan." *Id*. at 819. According to the court,

> [B]oth [Lachrone and Tynan] assaulted Lancaster out of exasperation with Lancaster's performance of his job. If a supervisor pursues his official duties with an excess of zeal, the employer is liable for the torts

9

resulting from that excess; they are in furtherance of the employer's goals.

*Id.* The court clarified, however, that "when the motive for the employee's intentional tort is *personal*—which is to say unrelated to his employer's objectives and therefore not in furtherance of those objectives—the employer is not liable under a theory of *respondeat superior*." *Id*. at 819-20 (emphasis added).

The assault alleged here, unlike in *Lancaster,* did not occur between a supervisor and a subordinate employee; both Plaintiff and Nicholas were conductors at the time of the incident. As a result, *Lancaster's* rationale for holding the railroad liable for a supervisor's misconduct does not apply. Plaintiff does not allege that Nicholas acted "out of exasperation" with Plaintiff's job performance, nor does he assert that Nicholas was pursuing his official duties "with an excess of zeal." *Id.* at 819. Rather, the only reasonable inference to be drawn from Plaintiff's Complaint is that Nicholas assaulted Plaintiff "for the sole purpose of satisfying his own temper or spite," *Sowards,* 580 F.2d at 715; such a motive was "unrelated to his employer's objectives and therefore not in furtherance of those objectives." *Lancaster*, 773 F.2d at 819. As a result, Plaintiff fails to state a plausible claim for relief under a theory of vicarious liability.

### C. Direct Liability

Liability may also extend to FELA employers based upon a theory of direct negligence. *See Lancaster*, 773 F.2d at 818 ("[D]irect negligence by the employer . . . [is] a basis that is independent of *respondeat superior*."). Unlike vicarious liability, this theory does not require that an employee act in furtherance of his employer's

objectives; however, it does require proof of the railroad's negligence. *Id.* at 820. That is, "if the employer could 'reasonably foresee' that the plaintiff would be assaulted, it is negligence to fail to prevent the assault whether or not the assault was intentional or criminal misconduct." *Sowards*, 580 F.2d at 715. While reasonable foreseeability of harm is an essential ingredient, the fact that "the foreseeable danger was from intentional or criminal misconduct is irrelevant;" an employer nonetheless has "a duty to make reasonable provision against it." *Harrison v. Missouri Pac. R. Co.,* 372 U.S. 248, 249 (1963).

Returning to *Lancaster*, while the Seventh Circuit found the railroad's vicarious liability for the acts of Lachrone and Tynan "to be plain," the issue was more difficult with regard to Funderburk, another supervising foreman. 773 F.2d at 819. Funderburk, against Lancaster's protests, "goosed" him, pulled his hair, hit him on the arm, and "twice stuck his hand down the back of Lancaster's pants— once squeezing a buttock, the other time sticking his finger into Lancaster's anus." *Id.* at 811. The court found that such actions were "not related to Funderburk's supervisory duties" but rather "the pure expression of perversion, infantilism, bad taste, or some combination of these things." *Id.* at 819. Nevertheless, the court upheld the railroad's liability on the theory of direct negligence, in other words, "that the railroad had information about [Funderburk's] propensities, and failed to act on the information." *Id.* at 820.

Similarly, in *Harrison*, a section foreman brought a FELA suit against the railroad in Illinois state court for injuries resulting from an assault by his section

11

hand. 372 U.S. at 248. Although a jury awarded the foreman damages, the trial judge granted the railroad's motion for judgment notwithstanding the verdict. The Illinois Appellate Court affirmed, holding that "there was no evidence sufficient to support a finding that the railroad knew or should have known prior to the assault of propensities of the assailant." *Id.* Reversing the lower courts, the Supreme Court pointed to evidence that the plaintiff's immediate superior warned the plaintiff that the section hand was "a bad actor and a trouble maker." *Id.* Additionally, the plaintiff complained to his supervisor "several times" about the assailant's misconduct and refusal to follow orders. *Id.* According to the Court, such evidence constituted sufficient facts to support the jury's finding of foreseeability. *Id.*

Here, unlike in *Lancaster* and *Harrison*, Plaintiff does not allege any facts indicating Nicholas' known propensity for, or history of, violence. Nor does the Plaintiff allege circumstances, such as previous complaints involving Nicholas' conduct, from which the railroad should have reasonably foreseen the occurrence of the assault. Therefore, Plaintiff fails to state a plausible claim for relief under a theory of direct negligence.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss Count I [15] is granted. Counts II through VII of Plaintiff's Complaint [1] stand.

Date: October 18, 2016

Entered:

_____
John Robert Blakey
United States District Judge